UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER SETZER,

                                        Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                                        Defendant.

Case No. 3:13-cv-05756-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his

applications for disability insurance and supplemental security income ("SSI") benefits.

Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the

parties have consented to have this matter heard by the undersigned Magistrate Judge. After

reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons

set forth below, defendant's decision to deny benefits should be affirmed.

                    FACTUAL AND PROCEDURAL HISTORY

        On January 20, 2004, plaintiff filed an application for disability insurance benefits and

another one for SSI benefits, alleging disability as of July 27, 2000, due to injuries to his right

side (including his back, shoulder and neck), continuous severe pain and depression. See ECF

#19, Administrative Record ("AR") 19, 123. Both applications were denied upon initial

administrative review on December 9, 2004, and on reconsideration on March 28, 2005. See AR

19. A hearing was held before administrative law judge ("ALJ") Ralph Jones, on September 19,

ORDER - 1

2007, at which plaintiff, represented by counsel, appeared but did not testify, and at which a vocational expert also appeared but did not testify. See AR 623-30.

A second hearing was held before ALJ Dan R. Hyatt on March 13, 2008, at which plaintiff, represented by counsel, appeared and testified, as did a different vocational expert. See AR 631-52. In a decision dated March 21, 2008, ALJ Hyatt determined plaintiff to be not disabled. See AR 19-29. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 22, 2009, making that decision the final decision of the Commissioner of Social Security ("Commissioner"). See AR 9; 20 C.F.R. § 404.981, § 416.1481. Plaintiff appealed that decision to this Court, which – based on the stipulation of the parties – remanded the matter for further administrative proceedings. See AR 685-89.

A third hearing was held before ALJ Hyatt on June 11, 2010, at which plaintiff, represented by counsel, appeared but did not testify, and at which a vocational expert appeared and testified. See AR 803-22. In a decision dated June 21, 2010, ALJ Hyatt again determined plaintiff to be not disabled. See AR 656-668. Plaintiff once more appealed the matter to this Court, which on November 10, 2011, reversed ALJ Hyatt's decision and remanded the case for further administrative proceedings. See AR 863-83.

On remand, another hearing was held before ALJ Steve Lynch on April 29, 2013, at which plaintiff appeared and testified, as did a vocational expert. See AR 1217-46. In a decision dated May 31, 2013, ALJ Lynch determined plaintiff to be not disabled. It does not appear from the record that the Appeals Council assumed jurisdiction of the case. See 20 C.F.R. § 404.984, § 416.1484. On August 29, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #1. The administrative record was filed with the Court on February 13, 2014. See ECF #19. The parties have completed their briefing, and thus

ORDER - 2

1    this matter is now ripe for the Court's review.

2          Plaintiff argues defendant's decision to deny benefits should be reversed and remanded

3    for an award of benefits, because the ALJ erred: (1) in failing to properly factor plaintiff's

4    personality disorder into his assessment of his residual functional capacity ("RFC"); (2) in

5    finding plaintiff lacked credibility instead of attributing his behavior to a personality disorder;

6    and (3) in rejecting the opinions of treatment providers Susan J. Davis, M.D., Charles P. Miller,

7    M.D., Louise McHarris, D.O., and Peter Schmidt, P.T. Plaintiff also argues this matter should be

8    remanded to further develop the record in light of the fact that the last seven minutes of the most

9    recent hearing's transcript are missing from the record. For the reasons set forth below, however,

10   the Court disagrees that the ALJ erred as alleged, and thus in determining plaintiff to be not

11   disabled, and therefore finds defendant's decision to deny benefits should be affirmed.

12                                    DISCUSSION

13

14         The determination of the Commissioner that a claimant is not disabled must be upheld by

15   the Court, if the "proper legal standards" have been applied by the Commissioner, and the

16   "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler,

17   785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security

18   Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

19   Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the

20   proper legal standards were not applied in weighing the evidence and making the decision.")

21   (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

22

23         Substantial evidence is "such relevant evidence as a reasonable mind might accept as

24   adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

25   omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

26

ORDER - 3

supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting <u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.    <u>Plaintiff's Personality Disorder</u>

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. <u>See</u> <u>id.</u> If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. <u>See</u> <u>id.</u>

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

<u>Sorenson</u>, 514 F.2d at 1119 n.10.

ORDER - 4

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In terms of plaintiff's mental residual functional capacity, the ALJ found he should have no interaction with the public, but occasional interaction with co-workers. See AR 831. Plaintiff asserts this RFC assessment fails to take into account that when his personality disorder "kicks in" he behaves against his own best interest, threatens those trying to help him and causes him to be discontinued from services by his treatment providers and others. ECF #26, p. 6. Plaintiff cites to excerpts of his testimony to support his contention here. See id. at pp. 4-6. But while plaintiff's interpretation of why he testified in the manner he did may be plausible, so too is that of the ALJ, if not more so (see AR 831-41 (attributing plaintiff's behavior mostly to lack of compliance with recommended treatment, symptom exaggeration and potential secondary gain issues)), in which case the latter's must be upheld. See Allen, 749 F.2d at 579.

In apparent further support of the above assertion, plaintiff cites opinion evidence from examining physician Beal Essink, M.D., and non-examining psychologist John Robinson, Ph.D., noting the functional limitations they assessed, but fails to provide any specific argument as to why the ALJ erred in rejecting those limitations.[2] See AR 835, 840; Carmickle v. Commissioner

---

[2] It should also be noted that Dr. Essink did not diagnose plaintiff with an actual personality disorder. See AR 473.

ORDER - 5

of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity will not be addressed); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).  Plaintiff also points to the observations of treating psychiatrist Sandy M. Bushberg, Ph.D., as "offer[ing] a window into [his] precarious mental condition." ECF #26, p. 8.

But while plaintiff interprets those observations as offering such a window, Dr. Bushberg herself provided no such opinion in regard thereto, and again plaintiff fails to explain how the ALJ erred in evaluating that medical source's findings. See AR 839. Dr. Bushberg, furthermore, did not diagnose plaintiff as having a personality disorder, let alone find he suffered from any significant work-related limitations stemming therefrom. See AR 1048-49, 1059-60, 1068-69, 1072-73, 1075-76, 1079-80,1092-93, 1099-1000, 1109-10, 1119-20, 1124-25, 1129-30.  Plaintiff also asserts the evidence from Dr.  Miller, Dr. Bushberg and Mr. Schmidt indicates his condition was deteriorating.  Here too, though, plaintiff fails to argue with any specificity how the evidence form these three sources establishes this, or how that evidence demonstrates the existence of any greater mental functional limitations stemming from a personality disorder not already taken into account by the ALJ.

Lastly, plaintiff asserts that at a minimum this matter should be remanded to schedule a neuropsychological evaluation that ALJ Jones stated at the September 2007 hearing he thought "would be advisable to do." AR 629. But plaintiff has failed to show that this statement by ALJ Jones as to what he thought would be advisable is binding on ALJ Hyatt, whose decision is the one before the Court for review. In addition, plaintiff has not shown that the evidence in the record was sufficiently ambiguous or that the ALJ found that evidence to be inadequate to allow for proper evaluation of his claim, such that the ALJ's duty to further develop the record was

1   triggered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Mayes v. Massanari,

2   276 F.3d 453, 459 (9th Cir. 2001).

3   II.    Plaintiff's Credibility

4         Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

5   642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

6   In addition, the Court may not reverse a credibility determination where that determination is

7   based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for

8   discrediting a claimant's testimony should properly be discounted does not render the ALJ's

9   determination invalid, as long as that determination is supported by substantial evidence.

10   Tonapetyan , 242 F.3d at 1148.

11         To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

12   reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

13   testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

14   Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

15   claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

16   and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

17   malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

18         In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

19   credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

20   symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

21   1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

22   physicians and other third parties regarding the nature, onset, duration, and frequency of

23   symptoms. See id.

ORDER - 7

Plaintiff argues the ALJ erred in discounting plaintiff's credibility on the following basis:

> . . . [Plaintiff] reported having a valid medical marijuana card and smoking marijuana to regulate pain, hunger, and stress. The record includes paperwork from THCF Medical Clinics in Bellevue, Washington beginning April 12, 2007, with yearly renewals continuing through April 12, 2011, regarding medical necessity for marijuana (29 F). Documentation for a medical marijuana card is unusual and welcome. However, objective records do not appear to support the requirements for the card and, even with semi-legal marijuana, the records demonstrate non-compliance on the part of the claimant as he does not employ the method of administration advised by the physician. A handwritten comment by the physician cautions the claimant not to use too much marijuana, and is consistent with the claimant's general history of polysubstance abuse. This use of marijuana is combined with using prescribed narcotic pain medication, as well as with routine drug seeking behavior and significant narcotics abuse (5F, 6F, 8F, 12F, 19F, 23F). Further, while the claimant urges that pain and limitations restrict functioning, including driving distances, he must travel over 200 miles each way from his residence to this clinic.

AR 832. Specifically, plaintiff asserts this is not a valid basis for doing so, because he followed his physicians' prescriptions, and because the ALJ himself may not determine what medications should be prescribed. See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for that of physician).

The ALJ, however, did not impermissibly act as his own medical expert, but instead merely pointed out that the evidence in the record does not contain actual objective findings establishing use of marijuana was medically indicated. This was proper. See Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are inconsistent with objective medical evidence can satisfy clear and convincing standard). Nor does plaintiff challenge the ALJ's reliance on the record evidence demonstrating drug seeking behavior, narcotics abuse and the ability to apparently travel long distances despite alleging that pain and other limitations restrict his ability to function. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (claimant's activities of daily living can "contradict

his other testimony"); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ properly

considered claimant's drug-seeking behavior).

The ALJ also discounted plaintiff's credibility because "there has been only conservative

and routine treatment," stating further that while plaintiff had "persisted in demanding some type

of cure for all [of his] complaints, the minimal nature of treatment needed" suggested that his

impairments did "not result in significant functional limitations which would preclude him from

engaging in basic work activity." AR 833.  This too was a proper basis for doing so, which

plaintiff again has not specifically challenged. See Burch v. Barnhart, 400 F.3d 676, 681 (9th

Cir. 2005) (upholding ALJ's discounting claimant's credibility in part due to lack of consistent

treatment, noting that fact that claimant's pain was not sufficiently severe to motivate her to seek

treatment, even if she had sought some treatment, was powerful evidence regarding extent to

which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly

considered physician's failure to prescribe, and claimant's failure to request serious medical

treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir.

1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower

level of pain and functional limitation).

The ALJ further found plaintiff to be less than fully credible on the basis that his treating

physicians "have been unable to identify the etiology of [the] alleged pain" (AR 833), which

plaintiff here too does not expressly challenge. See Regennitter, 166 F.3d at 1297. In addition,

the ALJ noted:

> . . . [T]he record "reflects routine noncompliance with medical treatment, not
> attending prescribed physical therapy despite multiple such prescriptions, not
> appearing on multiple occasions for scheduled medical appointments, as well
> as having no contacts with drug treatment strongly recommended by a treating
> physician (6E, 4F, 8F).  Such incidents and actions of routine noncompliance
> suggest a lack of sincerity in achieving medical improvement of alleged

problems and a lack of commitment to functional improvement, or,
conversely, that genuine problems do not exist.

AR 833; see also AR 834-35 (noting further evidence of noncompliant behavior with treating and examining medical sources). Failure to assert a good reason for not following a prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff argues the ALJ erred in discounting his credibility on this basis, rather than attributing such behavior to his personality disorder. But as discussed above, the ALJ did not err in evaluating the medical evidence regarding that alleged disorder, and accordingly was not obliged to attribute his noncompliance thereto as well.

Finally, the Court notes the ALJ relied on other valid bases for discounting plaintiff's credibility that also have not been expressly challenged.  For example, the ALJ noted evidence of symptom exaggeration and that plaintiff saw improvement with treatment. See AR 834; Tonapetyan, 242 F.3d at 1148 (ALJ properly discredited claimant's testimony in part based on "her tendency to exaggerate"); Morgan, 169 F.3d at 599; Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The ALJ also pointed to plaintiff's lack of cooperation, including during questioning at a prior hearing. See AR 836. An ALJ may rely in part on the claimant's hearing demeanor as a basis for discrediting his or her testimony. See Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986) (inclusion of ALJ's personal observations "does not render the decision improper"). Again, although plaintiff claims this behavior is a result of his personality disorder, the ALJ was not remiss in finding otherwise. Other inconsistencies in plaintiff's testimony were also noted by the ALJ, which adds further support for his decision to find plaintiff less than fully credible. See AR 836.

ORDER - 10

III.     The Opinions of Dr. Davis, Dr. Miller, Dr. McHarris, and Mr. Schmidt

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation

ORDER - 11

omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan, 242 F.3d at 1149. An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.    Dr. Davis

Plaintiff challenges the ALJ's following findings concerning the medical opinion evidence in the record:

> There is a May 31, 2001 letter from an urgent medical center physician, Susan Davis, M.D.,[3] stating the claimant has been disabled since July 2000 (8F). This opinion [is] given no weight as it is ambiguous; unsupported by objective evidence in the record; cites no evidence in support of the conclusion; fails to identify specific limitations that prevent the claimant from engaging in work activity; does not address substance abuse or noncompliance with treatment; and conflicts with the conservative treatment history and activities of daily living.

AR 835. Plaintiff argues objective medical evidence supports the above disability opinion. But

---

[3] As defendant points out, it appears this letter instead may have been written by another physician, J. J. Fisher, M.D. See AR 339. But as defendant also points out, the reasons the ALJ gave for rejecting the letter's opinion apply with equal force whether Dr. Davis or Dr. Fisher wrote it.

ORDER - 12

as the ALJ correctly noted, Dr. Davis does not refer to any clinical findings to support that

opinion. See AR 339; Batson, 359 F.3d at 1195 (physician's opinion need not be accepted if

inadequately supported by clinical findings). Plaintiff, furthermore, has not challenged any of the

other reasons the ALJ gave for rejecting Dr. Davis's opinion, let alone shown those reasons to be

improper. See, e.g., Batson, 359 F.3d at 1195 (ALJ need not accept physician's opinion if

inadequately supported "by the record as a whole"); Morgan, 169 F.3d at 601-02 (upholding

rejection of physician's conclusion that claimant suffered from marked limitations in part on

basis that other evidence of ability to function, including activities of daily living, contradicted

that conclusion). Accordingly, the ALJ did not err here.

      B.     Dr. Miller

      Plaintiff also challenges the ALJ's rejection of the opinions of Dr. Miller, which reads in

relevant part:

> The record contains a representative-created questionnaire completed on
> February 28, 2008[,] by [Dr. Miller], who notes that he had treated the
> claimant since June 6, 2005, a date subsequent to some of his treatment notes
> (24F). In completing this questionnaire the physician indicates that the
> claimant is unable to engage in work activity and would miss 4 or more days
> of work per month. This opinion conflicts with the conservative treatment
> history and actual activities of daily living; it offers insufficient objective
> evidence in support of limitations; it does not address either substance abuse
> or noncompliance with treatment, factors and behavioral aspects of the
> claimant's routine presentation, which this treating physician would have to
> be acutely aware of; and it fails to consider the claimant's brief return to
> heavy work as a timber faller in 2006, despite being encouraged to seek less
> demanding timber work (23F). In contrast, in April 2006 this physician
> instructed the claimant to locate light work as a carpenter or supervisor, and
> on June 4, 2007[,] Dr. Miller reported that the claimant "is able to sit, walk,
> talk and use his left upper extremity well" and he advised the claimant to look
> for employment as a "timber cruiser," a position that does not require timber
> cutting (23F). As the records show no significant change in condition between
> June 2007 and February 2008, it is unknown how or why this physician now
> believes the claimant to be totally disabled. However, this opinion is not
> credible as it appears that impaired objectivity or outright advocacy on the
> part of the physician in favor [of] the claimant may be involved. As discussed

ORDER - 13

above, the claimant did not notify this primary care provider of his alleged on the job injury occurring at the end of March 2006 or early April 2006, or about any alleged symptoms, until January 2007. However, a treatment note from December 3, 2009[,] describes the claimant as recovered from this injury (30F). In the majority of treatment records from this source the physician makes multiple references to drug and alcohol use by the claimant, as well as narcotic pain medication seeking behavior and abuse (23F; 26F; 30F). Conversely, in more recent assessments Dr. Miller has described the claimant as not abusing drugs or alcohol. There are no comments from this source discussing the claimant's consumption of marijuana to treat alleged pain, or whether this consumption is just reasonable use or is substance abuse. In general, information from this medical source is not given significant weight due to multiple conflicts, in particular with the level of treatment needed and the claimant's ordinary activities.

AR 835-36; see also 839.  The ALJ further found in relevant part:

. . . In a like manner, in a July 18, 2012, treatment note [Dr. Miller] states that he does not feel that the claimant is employable due to chronic pain and cervical to lumber spine immobility (34F-811). Again, this opinion advocating disability for the claimant raises issues of objectivity. More importantly, the opinion that the claimant is disabled ignores objective findings and appears to rely on subjective complaints. The physician lacks the professional expertise to state that an individual is disabled, especially when such a statement is contradicted by multiple instances demonstrating adequate functioning in many areas. Consequently, this opinion can be given little weight.

AR 839.

As with Dr. Davis's opinion, plaintiff asserts the ALJ erred in rejecting the opinions of Dr. Miller on the basis of a lack of objective evidence. But again the records containing Dr. Miller's opinions include very little in the way of clinical findings that would support the level functional limitation found. See AR 563-64, 1037; Batson, 359 F.3d at 1195. Nor do the actual clinical findings set forth in the progress notes from Dr. Miller plaintiff cites in his opening brief. See ECF #26, pp. 14-15 (citing 1036-37, 1040-42, 1057). Also as in regard to Dr. Miller's opinions, plaintiff does not challenge any of the other reasons the ALJ gave for rejecting them or show those reasons to be improper. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between medical source's functional assessment and that source's clinical

ORDER - 14

notes, recorded observations and other comments "is a clear and convincing reason for not relying" thereon); <u>Batson</u>, 359 F.3d at 1195; <u>Morgan</u>, 169 F.3d at 601-02; <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir.1989) (opinion premised to large extent on claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted); <u>Magellanes</u>, 881 F.2d at 751 (ALJ may decline to accept opinion regarding ultimate issue of disability if supported by record).

   C. <u>Dr. McHarris and Mr. Schmidt</u>

  Lastly in terms of the medical evidence in the record, the ALJ found in relevant part:

> Included in the medical record since the last hearing are a series of the form used . . . for determining if public assistance is warranted, completed primarily by Louise McHarris, DO. Beginning in March 2004, the primary problem listed is a debilitating injury to the right shoulder, neck, arm, and hand; with normal x-rays and pending neurology evaluation; but pain of such a degree that the claimant is unable to work (31F). On November 12, 2004, Dr. McHarris writes that the claimant is her patient; he is currently in pain and unable to work; he is being evaluated; and his condition should be covered by workers' compensation. Records over several months list the same problems of chronic pain and a rash likely due to insect bite. When a thoracic MRI was conducted on August 13, 2004, the record notes that due to the claimant's discomfort level and anxiety conscious conscious sedation had to be employed to obtain results showing a normal thoracic MRI. The July 14, 2004 MRI of the right shoulder also showed no deficits. This record also includes a June 29, 2011, report by Peter Schmidt, PT, where this physical therapist indicates that the claimant experiences severe pain affecting all aspects of his life (31F). This source states that the claimant tolerates only very light functional activities. The information from Dr. [Mc]Harris is not credible and given little weight because no objective basis for the pain is noted. The information from physical therapist Schmidt is treated in the same manner for the same reasons, in addition to the consideration that he is not an acceptable medical source . . .

AR 836-37. Plaintiff argues here too the ALJ erred in rejecting the opinions Dr. McHarris and Mr. Schmidt on the basis of a lack of objective medical evidence.

  The Court agrees the ALJ erred in finding there is *no* objective basis for the pain noted by Dr. McHarris, as there appears to be at least some clinical findings that could cause pain set forth

ORDER - 15

in the form she completed and her progress notes. <u>See</u> AR 408, 935. The Court finds that error to

be harmless, however, given that those findings are scant at best and unlikely to have changed

the ALJ's ultimate disability determination, particularly given the propriety of his evaluation of

the other medical evidence in the record and plaintiff's credibility discussed above. <u>See</u> <u>Stout v.</u>

<u>Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-

prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); <u>Parra v. Astrue</u>, 481

F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's

ultimate decision."). The same is true in regard to the Mr. Schmidt's progress notes and opinion.

Even though Mr. Schmidt produced more clinical findings, they do not establish the existence of

disabling functional limitations. <u>See</u> AR 953, 957-58, 962-63, 990-91, 999, 1010, 1016-17, 1028-

29, 1167-68, 1170-71. Nor has plaintiff challenged the ALJ's other stated reason for rejecting

Mr. Schmidt's opinion. <u>See</u> <u>Gomez v. Chater</u>, 74 F.3d 967, 970-71 (9th Cir. 1996) (ALJ may

give less weight to opinion of non-acceptable medical source).

IV.     <u>The Missing Hearing Minutes</u>

        The record shows the audio recording for the most recent hearing ended seven minutes

prior to the end of the hearing. <u>See</u> AR 1246. Plaintiff argues this missing portion of the hearing

transcript is essential, because it contains hypothetical questions posed to the vocational expert

that include limitations assessed by plaintiff's providers supporting an inability to work, thereby

requiring that at the very least this matter be remanded to further develop the record. <u>See</u> ECF

#26, p. 16.  The Court disagrees.  As discussed above, the ALJ committed no reversible error in

evaluating the medical opinion evidence in the record.  Thus, the ALJ would not have been

obligated to adopt any additional vocational expert testimony that was based on more restrictive

limitations than adopted by the ALJ.

ORDER - 16

1

## CONCLUSION

2      Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded

3   plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

4      DATED this 25th day of August, 2014.

5

6

7

8   Karen L. Strombom
    United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 17